**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Derek L Burton, | No. CV-22-00755-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Louis DeJoy, | |
| Defendant. | |

Before the Court is Defendant Louis DeJoy, Postmaster General for the United States Postal Service's ("USPS") motion for summary judgment. (Doc. 63.) The motion is fully briefed (Docs. 75, 76, 79) and, for the reasons set forth below, is granted in part and denied in part.

I.      **Background**[1]

Plaintiff Derek L. Burton is a black male who has been a supervisor for USPS for nearly 20 years. He was a supervisor at the USPS Sunnyslope station in Phoenix, Arizona from 2018 to 2021. In 2020 he was assigned to the Sunnyslope Post Office as a promoted EAS 17 supervisor in a morning position, responsible for the first line supervision of City Letter Carriers who delivered mail to the assigned station zip codes. The afternoon supervisor was Jeffery White, who was the station's designated Stamp Custodian.[2] In the

---

[1] These facts are presented in the light most favorable to Plaintiff, as they must be at the summary judgment stage.
[2] The station Stamp Custodian's responsibilities included maintaining the station's postal stamp inventory.

1  latter part of 2020, White was diagnosed with cancer and went on leave status. He remained

2  on leave until late April 2021.

3      The Station Manager for the Sunnyslope Post Office was Kim Collins. Collins'

4  responsibilities included designating the station Stamp Custodian for that post office

5  facility. When White left on leave, instead of designating a replacement Stamp Custodian,

6  in early January Collins told Plaintiff to act as the custodian but to do so using White's

7  identification and password. Immediately thereafter, Collins, who had been in and out of

8  work for months while herself undergoing cancer therapy, was transferred to a station in

9  New Jersey. Collins was replaced as Station Manager by Stephanie Cook.

10      In January 2021, Plaintiff began using White's login and password for stamp

11  transactions. The USPS computer reflects many stamp transactions conducted under

12  White's login and password credentials from January through March 2021. White was on

13  extended medical leave that entire time. Plaintiff contends that instead of making an official

14  designation of Stamp Custodian for the station, when Cook became Station Manager, she

15  told him to continue as the Stamp Custodian using White's credentials.[3]

16      It is a violation of USPS policy to use another supervisor's password to record stamp

17  transactions. By using White's credentials, those transactions were recorded in White's

18  name, and Plaintiff was not shown to have any accountability for the transaction. Plaintiff

19  was aware that by using White's credentials he would not be recorded as having been

20  involved in the transactions.

21      On March 24, 2021, after a count of the Sunnyslope Station stamp inventory came

22  up short by nearly $1,500, it was discovered that Plaintiff was using White's credentials.

23  On March 24, 2021, Plaintiff was put on Emergency Placement (paid administrative leave)

24  and sent home. On March 27, 2021, Plaintiff's detail assignment to the Scottsdale Airpark

25  Station did not occur because Plaintiff was not available to report due to his Emergency

26  Placement status. On April 5, 2021, the Emergency Placement was reissued. On April 9,

27  2021, Manager Ibuado submitted a Proposed Personnel Action to the USPS Labor

28  _____

[3] Plaintiff did not mention Cook's instructions during the administrative process and Cook denies making such a statement.

Department seeking removal of Plaintiff. On April 23, 2021, Plaintiff received notice that he owed $1,499.96 based on his accountability for the unit reserve shortage from the audit of March 24, 2021. On May 6, 2021, Plaintiff filed an EEO Complaint. On May 14, 2021, USPS notified Plaintiff that the missing $1,500 in Postal assets would be involuntarily taken from his salary. Ultimately, the money was not withdrawn because the missing money was discovered and accounted for. However, Plaintiff lost one day of pay.

The Labor Department rejected Manager Ibuado's Proposed Personnel Action and instructed that it be changed from removal to a 14-day suspension. A modified Proposed Personnel Action was signed by the concurring official on May 17, 2021. On May 20, 2021, the actual Notice of Proposed Personnel Action was sent to Plaintiff. On July 16, 2021, Postmaster Tina Sweeney issued a Letter of Warning in lieu of a 14-suspension as a reprimand. On September 25, 2021, Plaintiff's lateral transfer request to the Scottsdale Airpark Station was approved.

## II.    Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. Where the

1   record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving

2   party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v.*

3   *Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

4       **III.**    **Analysis**

5           **A. Discrimination**

6           The Court evaluates racial discrimination in employment claims using the burden-

7   shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

8   (1973). In a racial discrimination case, a plaintiff first must establish a prima facie case of

9   discrimination by showing that he: (1) is a member of a protected class, (2) is qualified for

10  his job, (3) suffered an adverse employment action, and (4) was treated less favorably than

11  other similarly situated employees outside his protected class. If a plaintiff makes this

12  threshold showing, "[t]he burden of production, but not persuasion, then shifts to the

13  employer to articulate some legitimate, nondiscriminatory reason for the challenged

14  action." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir.

15  2000). If the employer does so, the burden shifts back to the plaintiff to demonstrate that

16  the employer's proffered reason is a pretext for discrimination, "either directly by

17  persuading the court that a discriminatory reason more likely motivated the employer or

18  indirectly by showing that the employer's proffered explanation is unworthy of credence."

19  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). A plaintiff's evidence

20  on this point "must be both specific and substantial to overcome the legitimate reasons put

21  forth by," the employer. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659

22  (9th Cir. 2002).

23          Plaintiff has made prima facie showing that he was a member of a protected class,

24  qualified for his job, suffered an adverse employment action, and was treated less favorably

25  than another similarly situated employee outside the protected class. Collins,[4] who is not

26          [4] Based on the lack of facts alleged or arguments made in Plaintiff's response brief
regarding White and Cook, the Court understands that Plaintiff is claiming only that Collins

27  is an appropriate comparator. (*See* Doc. 24 at 5 (warning that "the responding party in its
response must carefully address all material facts raised in the motion," and that "[a]ny fact

28  that is ignored may be deemed uncontested").)

black, directed Plaintiff's actions, but was not subjected to investigations, scrutiny, audits, or false allegations.

Defendant has articulated a legitimate, nondiscriminatory reason for the challenged action. It is undisputed that using White's password credentials to accept stock and money orders, transfer stock, and conduct audits was a violation of the written policies of USPS. However, assuming facts in the light most favorable to Plaintiff, he has met his burden of demonstrating that Defendant's proffered reasons are unworthy of credence. Defendant argues that Collins is not a valid comparator because, as a manager, she is not similarly situated to Plaintiff whose position was that of a supervisor and because she did not misuse anyone's credentials. However, Collins instructed Plaintiff to use White's credentials. Whether she is identical to Plaintiff in every conceivable respect is not the issue. She need only be comparable in all material respects. Here, she allegedly was involved in the misconduct for which Plaintiff was investigated and sanctioned. Her involvement in the misdeeds was not negligible. Yet she was not subject to any of the adverse employment actions that were imposed on Plaintiff.

Defendant further argues that even if Collins had some responsibility or participated in Plaintiff's misconduct, Phoenix Management did not have jurisdiction to discipline her because she had transferred to New Jersey by the time the misuse over which Plaintiff was disciplined occurred. However, Plaintiff's suit is against DeJoy, the Postmaster General, not against Phoenix Management or Sunnyslope station. As Postmaster General, DeJoy is not without the ability to require investigation or adverse employment action. Defendants have offered no support for the proposition that relocating immunizes an employee for violations of USPS policy. For these reasons, the Court finds triable issues of fact exist concerning Plaintiff's claim of racial workplace discrimination. Summary judgment on this claim is denied.

**B. Retaliation**

To make a prima facie case of retaliation, a plaintiff must present evidence showing: "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal

link between the two." *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003) (citation and quotation marks omitted). A plaintiff must offer "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312 (1996) (citation, internal punctuation, and emphasis omitted). Retaliation claims require a "causation in fact," meaning they are governed by a "but-for" causation standard. *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

The chronology of events resolves the retaliation claim. March 24, 2021, Plaintiff was put on Emergency Placement. On March 27, 2021, Plaintiff's detail assignment to the Scottsdale Airpark Station did not occur because of his Emergency Placement status. On April 5, 2021, the Emergency Placement was reissued. On April 9, 2021, Manager Ibuado submitted a Proposed Personnel Action seeking removal of Plaintiff. On April 23, 2021, Plaintiff received notice that he owed $1,499.96. On May 6, 2021, Plaintiff filed his EEO Complaint. The Labor Department rejected Manager Ibuado's Proposed Personnel Action and instructed that it be changed from removal to a 14-day suspension. A modified Proposed Personnel Action was signed by the concurring official on May 17, 2021. On May 20, 2021, the Notice of Proposed Personnel Action was sent to Plaintiff. On July 16, 2021, Postmaster Sweeney issued a Letter of Warning instead.

Plaintiff has not met his burden of establishing the causal link between the protected activity and the adverse employment actions. The adverse employment actions were taken, and the Proposed Personnel Action (a recommendation for removal) was made *before* Plaintiff filed his EEOC complaint. Though the ultimate decision regarding the Proposed Personnel Action (a warning letter) was not made until after the EEO Complaint had been filed, a Personnel Action was already in the works when the EEO Complaint was filed. And, ultimately, the Personnel Action of a reprimand was a lesser punishment than was first recommended, undermining Plaintiff's claim that the Personnel Action was retaliation for his EEO Complaint. Summary judgment is granted on the retaliation claim.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 63) is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

**IT IS FURTHER ORDERED** that the parties shall appear for a telephonic trial scheduling conference on **October 22, 2024, at 10:00 a.m**. Call-in instructions will be provided via separate email.

Dated this 20th day of September, 2024.

Douglas L. Rayes
Senior United States District Judge