**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Derek L Burton,<br><br>              Plaintiff,<br><br>v.<br><br>Louis DeJoy,<br><br>              Defendant. | No. CV-22-00755-PHX-ROS<br><br>**ORDER** |

Plaintiff Derek Burton ("Plaintiff") brought this employment discrimination action against his employer, the United States Postal Service ("USPS"). Plaintiff claims he was discriminated against based on his race when he was placed on administrative leave on March 24, 2021, and when he was given a Letter of Warning in Lieu of a 14-day Suspension on July 6, 2021.

The case proceeded to a jury trial on the racial discrimination claim. Pursuant to Fed. R. Civ. P. 50, Defendant moved for judgment as a matter of law after Plaintiff presented his case. The motion was denied, and on March 10, 2025, the jury found for Plaintiff and awarded him $300,000.00 in damages. (Doc. 141). The Clerk of Court then entered judgment in Plaintiff's favor consistent with the jury's verdict. (Doc. 140). Defendant renewed the Motion for Judgment as a Matter of Law and, in the alternative, moved for a new trial.

For the following reasons, Motions will be denied.

## I. Factual Background[1]

Plaintiff has worked for USPS for nearly 30 years and has been a supervisor for nearly 20 years. In 2020, Plaintiff was working as a morning supervisor at the Sunnyslope station in Phoenix, Arizona. Plaintiff had served as the station's Stamp Custodian, but in 2020 that role was held by Jeffrey White, another supervisor. Stamp Custodian was a key role, as the Custodian's responsibilities included accountability for and management of the station's entire inventory of stamps. Other members of the management team at Sunnyslope included Station Manager Kim Collins and, later, her replacement, Stephanie Cook. Plaintiff was the only Black member of this group.

Toward the end of 2020, Supervisor White went on medical leave status after a cancer diagnosis. Supervisor White's absence left the station without a Stamp Custodian, and as his leave was extended, the station needed someone to manage stamp transactions. It is a violation of USPS policy for one employee to use another's credentials to handle the stamp inventory. Ordinarily, USPS policy under these circumstances required the Stamp Custodian's duties be transferred through a detailed protocol involving an audit and password reset. At this time, Manager Collins was suffering from her own cancer treatments. Rather than designate a new Stamp Custodian and transfer the stamp stock, Manager Colins instructed Plaintiff to use White's password to handle the stamp transactions. Plaintiff then began fulfilling the Stamp Custodian's role using Supervisor White's credentials. Shortly thereafter, Manager Collins was transferred to another station and was replaced by Stephanie Cook.

From January through March 2021, Plaintiff handled many stamp transactions while Supervisor White remained on medical leave. Plaintiff asserts that when Manager Cook arrived to replace Manager Collins, she, too, instructed him to continue handling the stamp transactions using White's password.

On March 24, 2021, after higher management became aware of Plaintiff's use of

---

[1] As required in considering a renewed motion for judgment as a matter of law, the facts are presented in the light most favorable to Plaintiff as the prevailing party. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).

- 2 -

Supervisor White's credentials to conduct stamp transactions, there was an audit of the Sunnyslope Station stamp inventory. This count found the inventory to be short by $1,499.96 in stamps. That same day, Plaintiff was escorted off site and placed on Emergency Placement. Although Plaintiff's Emergency Placement was paid administrative leave, the first document issued reflected that it would be unpaid. In April, Manager Erica Ibuado submitted a Proposed Personnel Action seeking to terminate Plaintiff. Plaintiff remained on Emergency placement until May 20, 2021. The missing stamps were located shortly after Supervisor White's return, when he was restored to his Stamp Custodian duties and performed a count. Manager Ibuado's Proposed Personnel Action was rejected and ultimately, Plaintiff received a Letter of Warning in lieu of a 14-day suspension.

## II.   Legal Standards

### A.  Renewed Motion for Judgment as a Matter of Law

Pursuant to Fed. R. Civ. P. 50, district courts may set aside a jury verdict as a matter of law if a reasonable jury would not have had a legally sufficient evidentiary basis to support the verdict. Fed. R. Civ. P. 50(a), (b). A "party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)). "A renewed motion for judgment as a matter of law should be granted if the evidence permits only one conclusion and that conclusion is contrary to the jury's verdict." *Martin v. California Dep't of Veterans Affs.*, 560 F.3d 1042, 1046 (9th Cir. 2009) (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

Conversely, a "jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008)). "In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Harper*,

553 F.3d at 1021 (citing *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227-28 (9th Cir. 2001)). The Court must review the evidentiary record "in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* While reviewing motions for judgment as a matter of law, the Court always remains conscious that the "jury is the 'constitutional tribunal provided for trying facts in courts of law.'" *Id.* (quoting *Berry v. United States*, 312 U.S. 450, 453 (1941)).

### B. New Trial

The Court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Recognized grounds for a new trial "include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). The Court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citation omitted). Unlike a Rule 50 motion, a district court reviewing a motion for a new trial has "the duty, to weigh the evidence as [the Court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence," where the Court believes "the verdict is contrary to the clear weight of the evidence, or" to prevent a miscarriage of justice. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (quoting *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 2246, 256 (9th Cir. 1957), *cert denied*, 356 U.S. 968 (1958)). "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Id.* (citations omitted).

### III. Analysis

### A. Renewed Motion for Judgment as a Matter of Law

Defendant contends no reasonable jury could have found that Plaintiff had met his burden of proof because no proffered comparator was similarly situated. Defendant does not challenge the jury instruction defining similarly situated employees but rather contends there was insufficient evidence as a matter of law to conclude that similarly situated employees outside Plaintiff's race or color were treated more favorably.

"Similarly situated" is broadly defined: other employees are similarly situated to the plaintiff when they have similar jobs and display similar conduct. Here, there was sufficient evidence for the jury to conclude that similarly situated employees outside Plaintiff's race or color were treated more favorably.

1. **Plaintiff provided sufficient evidence for a jury to conclude that there was a comparator with a similar job**

Defendant contends that none of the proffered comparators were similarly situated because Plaintiff was the only person acting as the Stamp Custodian.[2] However, Defendant's contention that a comparator must have a job "bordering on identical" to the plaintiff misstates the requirement for similarly situated comparators: similarly situated means having a similar job and displaying similar conduct. To accept Defendant's definition exceeds the requirements of this standard and would ensure that no employee who is the only person holding a particular position or fulfilling a particular function can ever prove discrimination.

Plaintiff's position was that of a station supervisor. The other proffered comparators, Manager Cook, Manager Collins, and Supervisor White, were two station managers and another station supervisor. Supervisor White and Plaintiff both held the position of station supervisor; it is more than just reasonable to conclude that they had similar jobs. At trial, Postmaster Tina Sweeney testified that as a station supervisor, Plaintiff "managed retail delivery operations in his station, managing clerks, carriers, custodians, retail operations, anything to do with the station" (Trial Day 3 Transcript, page 104) and that making sure there is a Stamp Custodian within a station is "all EAS's responsibility, not just the

---

[2] It is uncontested that Plaintiff was not, in fact, the Stamp Custodian.

manager," with no "bright line distinction between the manager being responsible for appointing and ensuring that the stamp custodian takes ownership of the stock and the supervisors responsibility to do the same thing." All managers and supervisors were executive administrative ("EAS") employees. Plaintiff's EAS level was 17, and Manager Collins' was 22. Manager Cook, in her prior placement, also held an EAS level of 17 before she was detailed to serve as the Sunnyslope station manager. Based on this evidence, a reasonable jury could conclude that Plaintiff's job as a station supervisor was similar to that of a station manager.

2. **Plaintiff provided sufficient evidence for a jury to conclude there was a comparator who displayed similar conduct**

Defendant contends that Plaintiff was the only person to use Supervisor White's credentials to perform stamp transactions and, thus, none of the proffered comparators are similarly situated. However, this argument inappropriately narrows the definition of "similarly situated." Comparators are not required to have engaged in the exact alleged offense; they are only required to display similar conduct. The evidence presented at trial showed Plaintiff's conduct that led to his discipline was behavior that violated security procedures and circumvented appropriate accountability protocols. While there was no evidence that other comparators personally used another employee's credentials, Plaintiff testified that Manager Collins and Manager Cook instructed him to do so, and Supervisor White testified that he voluntarily gave Manager Collins his password in violation or or at least outside of regular security protocols.

Defendant argues that this case resembles *Vasquez v. City of Los Angeles*. In Vasquez, the plaintiff worked at a youth detention center, and he was disciplined for disobeying a direct order from his supervisor by playing a game of football with the youth. The court found no similarly situated comparators because the other employee who participated in the game did not know it had been prohibited, and the supervisor's alleged offenses were entirely different. Therefore, the court reasoned the proffered comparators "were not involved in the same type of offense" as the plaintiff and did not "engage in

1  problematic conduct of comparable seriousness." *Vasquez*, 349 F.3d at 641. In contrast,
2  here all four individuals engaged in forbidden behavior and failed to follow designated
3  security and accountability procedures regarding the stamp stock. A reasonable juror could
4  conclude these actions were similar conduct to Plaintiff's because they were breaches of
5  security and accountability procedures.

6  As such, the jury's verdict is supported by substantial evidence, and the Motion for
7  Judgment as a Matter of Law will be denied.

**B. Motion for a New Trial**

9  Defendant argues in the alternative that a new trial is justified because (1) the verdict
10  was against the weight of the evidence, (2) the damages award was excessive, (3) the jury
11  was confused by the instruction on the business judgment rule, and (4) the jury was
12  confused by the Court's dead-locked jury instruction. The Court finds none of these
13  arguments justify granting a new trial and addresses each in turn.

14  As discussed above, the jury's verdict was supported by sufficient evidence to find
15  in favor of Plaintiff. Each party had adequate opportunity to present his case, and the
16  evidence presented was sufficient to support a reasonable inference of discrimination. As
17  such, the verdict and was not against the clear weight of the evidence.

18  The Court "allow[s] substantial deference to a jury's finding of the appropriate
19  amount of damages" and will uphold the jury's damages award "unless the amount is
20  grossly excessive or monstrous, clearly not supported by the evidence, or based only on
21  speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. V. City of Monterey*, 95
22  F.3d 1422, 1435 (9th Cir. 1996). The jury verdict awarded Plaintiff $300,000 in damages.
23  Defendant argues that this amount is excessive and justifies a new trial or remitter. The
24  jury was instructed on damages thus:

> The plaintiff has the burden of proving damages by a preponderance of the evidence. In this case, damages include the amount of money that will reasonably and fairly compensate the plaintiff for the mental and/or emotional pain and suffering experienced by him as a result of the workplace discrimination that occurred. It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or

- 7 -

conjecture.

(Doc. 137 at 18). At the time of trial, Defendant did not object to this instruction, nor has Defendant argued that it is incorrect. Extensive testimony established the nature of the events at issue and Plaintiff and his wife, Mrs. Burton, testified as to the impact on Plaintiff. Plaintiff's experiences caused stress, depression, uncertainty, and fear, and impacted his relationships with his family, his enjoyment of life, and his reputation. Defendant did not argue against the requested damages at trial or offer evidence refuting Plaintiff's pain and suffering. The Court finds the damages awarded were not grossly excessive and were sufficiently based upon the evidence presented at trial.

Defendant asserts that the Court's jury instruction on the business judgment rule misstated the law. Jury instruction 15 stated as follows:

> An employer has discretion in making legitimate, thus lawful business decisions. This requires however that the decision(s) at issue is/are not based in whole or part on prohibited criteria, such as the Race or Color of an employee.

(Doc. 137 at 17). Defendant argues that this instruction "allows jurors to find pretext if the jurors believed the USPS employees were racist, regardless of whether the USPS's decision was based on legitimate non-discriminatory business reasons." (Doc. 155 at 17). It is not clear how this instruction is alleged to have created such a "loophole," *Id.*, when the instruction explicitly states that a business decision is lawful when "not based in whole or in part on…the Race or Color of an employee." From this, it is not reasonable to infer that a juror would believe that they could find for the Plaintiff if USPS employees harbored racial animus even if that racial animus played no role in the decision. The Court finds this instruction was accurate and did not create jury confusion.

Finally, Defendant contends the Court's unanimity instruction may have confused the jurors into rendering a plaintiff's verdict. However, the instruction Defendant challenges focused on the jury's responsibility to deliberate, weigh the evidence, and make an impartial judgment. The Court finds this instruction did not substantially mislead the jury. Defendant also takes issue with the Court's statement that "you cannot reach a unanimous verdict if you violate your judgment and conscience, and only you can decide

- 8 -

that." It is unclear how this statement, as Defendant suggests, may have invited jury nullification when it specifically instructs that jury that they cannot violate their judgment to reach unanimity.

Defendant has not shown grounds sufficient to justify a new trial and as such, the Motion for a New Trial will be denied.

### IV. Conclusion

For the reasons given above, the Court finds sufficient evidence was presented at trial for a rational trier of fact to have found the essential elements of Plaintiff's claim.

**IT IS ORDERED** the Motion for Judgment as a Matter of Law is **DENIED**.

**IT IS FURTHER ORDERED** the Motion for a New Trial is **DENIED**.

Dated this 17th day of November, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge